IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02379-RBJ-NRN

CALVIN JOHNSON,

Plaintiff,

v.

SGT. SOTO and
MS. STEVENS

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
(DKT. #51)**

---

**N. Reid Neureiter
United State Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #52) issued by Judge R. Brooke Jackson referring Defendants Sgt. Soto and Ms. Stevens' (collectively "Defendants") Motion to Dismiss Amended Complaint. (Dkt. #51.) The Court has carefully considered the motion and Plaintiff Calvin Johnson's Response.[1] (Dkt. #53.) The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and makes the following recommendation.

---

[1] At the April 24, 2018 Scheduling Conference held before retired Magistrate Judge Michael J. Watanabe, the Court clarified that Mr. Johnson's Motion entitled Motion Not Only to Grant the Following Things, But Also is a Response to the Defendants (Dkt. #53, filed on April 6, 2017) was indeed Mr. Johnson response to the subject motion. (*See* Dkt. #62.)

# I. BACKGROUND

The following allegations are taken from the relevant, non-dismissed portions of Mr. Johnson's Amended Complaint. (Dkt. #23.)

Mr. Johnson is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and is currently housed at the Sterling Correctional Facility ("SCF") in Sterling, Colorado. (*Id.* at 3.) Sgt. Soto is a corrections officer at Colorado State Penitentiary ("CSP"). Ms. Stevens is a mental health staff member at CSP. (*Id.*)

Mr. Johnson alleges Sgt. Soto used excessive force on August 29, 2017, when he tasered Mr. Johnson. (*Id.* at 19-31.) Mr. Johnson had just finished assaulting a different corrections officer after he was not permitted to take a "state-loaner t.v." with him when his classification was changed and he was scheduled to be progressed to another unit. (*Id.* at 19.) He alleges that

> about 10 second or so after my assaulting an officer after I had stepped away from the escort officers then stood still no longer showing any type of aggression towards officers then that's when Sgt. Soto decided to taser me. Thing is that prior to leaving my cell my hands were handcuffed behind my back and the security protocol staff had previously placed me on me was no less than a 3 officer escort for me at all times.

(*Id.* at 19-20) (extraneous quotation marks omitted.) He further alleges that "one officer claimed he told me to lay on my stomach but he lied because the only person who made any sound was the guy that I kicked when he said 'oh my god.'" (*Id.*)

In his second claim, Mr. Johnson alleges that Ms. Stevens was deliberately indifferent to his serious mental health needs. He states that he tried to get a CSP psychiatrist to provide him with medication for his mental health, but the basic message to him "is that they find no symptoms from me that I have any mental health condition at all and would only prescribe me 'trazadone' to help me sleep." (*Id.* at 23.) Mr. Johnson

states that he has "spoken with mental health staff many times in the past both in prison and the outside world and they all have had different opinions from this most recent psychiatrist[.]" (*Id. at* 23-24.) Mr. Johnson believes he suffers from anxiety, depression, and post-traumatic stress disorder ("PTSD"). (*Id.* at 24.) He alleges that Ms. Stevens "is one of the main mental health staff that I met with just before and during the August assault on officer situations and she also knew I was experiencing trauma that would push me mentally over the edge to assault staff and did nothing to help me." (*Id.*)

Defendants now move for Mr. Johnson's Amended Complaint to be dismissed in its entirety. (Dkt. #51.)

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Mr. Johnson is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct

3

arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**b. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to

4

relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III. ANALYSIS

Defendants argue that Mr. Johnson's Amended Complaint should be dismissed for several reasons. First, they claim that they immune from liability for damages and retrospective injunctive relief in their official capacities. Next, they contend that any claim for damages is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants also maintain that they are entitled to qualified immunity because Mr. Johnson's allegations fail to state actionable claims for relief. Finally, they argue that Mr. Johnson is not entitled to damages and any claim for injunctive relief is moot.

### a. Official Capacity Claims

As an initial matter, the Court agrees with Defendants that to the extent that Mr. Johnson asserts a claim for damages against them in their official capacities, such claims are barred by the Eleventh Amendment. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (holding that the Eleventh Amendment bars claims for damages against entities that are instrumentalities or arms of a state). However, the Court construes Mr. Johnson's claims to be asserted against Defendants in their individual capacity.

### b. Application of *Heck v. Humphrey*

Defendants argue that Mr. Johnson is barred from bringing his claims because he pled guilty to Second Degree Assault- Assaulting a Peace Officer, a Class 4 Felony, arising from the August 29, 2017 incident. (*See* Dkt. #51-1.)[2] Defendants claim that "[a] judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence. Indeed, Plaintiff had an opportunity to raise any mental health or related defense during his criminal case." (Dkt. #51 at 6.)

A person cannot bring a § 1983 action for damages based on an allegedly invalid conviction or sentence unless the conviction or sentence has previously been invalidated:

---

[2] Dkt. #51-1 is the Colorado State Courts - Data Access for *People v. Johnson, Calvin W.*, Fremont District Court Case No. 17CR513, and the related Mittimus and Plea Agreement. Defendants assert that the Court may take judicial notice of court records from another case. (Dkt. #51 at 6 n.1.) The Court agrees. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

> When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (footnotes omitted) (emphasis added). "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Muhammad v. Close*, 540 U.S. 749, 751–52 (2004).

Here, the Court takes judicial notice that Mr. Johnson was charged with and pled guilty to second degree assault on a peace officer. The Court also acknowledges that "Colorado's second degree assault statute contains a 'provocation' factor that defendants may raise during trial for mitigation purposes if the defendant is found guilty." *Adams v. Dyer*, 223 F. App'x 757, 761 (10th Cir. 2007) (citing Colo. Rev. Stat. § 18–3–203(2)(a)). However, there is no indication that Mr. Johnson was charged with assaulting Sgt. Soto. The Court presumes that the assault victim was the officer kicked by Mr. Johnson. Sgt. Soto's alleged use of excessive force only came after the assault, when Mr. Johnson claims he was "standing still no longer being aggressive . . . and I was already handcuffed with a 3 officer escort[.]" (Dkt. #23 at 20.) Accepting these allegations as true, as I must, Sgt. Soto has not persuaded the Court that holding him

7

liable for excessive force would "necessarily imply" that Mr. Johnson's conviction was invalid. Thus, *Heck v. Humphrey* does not bar Mr. Johnson's claim. [3]

c.  **Qualified Immunity/Failure to State a Claim**

Defendants next argue that they are entitled to qualified immunity on Mr. Johnson's claims for relief.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, it is important to bear in mind that because this defense is being evaluated in relation to a Rule 12(b)(6) motion, Defendants are

---

[3] The Court fails to see how *Heck v. Humphrey* would bar Mr. Johnson's deliberate indifference claim against Ms. Stevens. A finding that prison staff was deliberately indifferent to his mental health would not constitute a defense to the assault charge, nor would it imply that that conviction was invalid.

subjected "to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As a result, it is Defendants' conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Thus, when "addressing the issue [of qualified immunity] at the motion to dismiss and not the summary judgment stage, [a] [p]laintiff is only required to allege a constitutional violation that is plausible on its face." *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *2 (N.D. Okla. Jan. 6, 2009).[4]

### 1. Excessive Force Claim Against Sgt. Soto

Sgt. Soto argues he is entitled to qualified immunity because Mr. Johnson's amended complaint fails to state a plausible excessive force claim against him.[5] The Court disagrees.

Mr. Johnson alleges that Sgt. Soto violated the Eighth Amendment, which prohibits cruel and unusual punishment, by using excessive force—more specifically, by

---

[4] It is not uncommon for courts to defer ruling on qualified immunity until the summary judgment stage. *See, e.g., Harvey v. Gonzalez*, No. 14-cv-02174-RBJ-NYW, 2015 WL 13730685, at *7 (D. Colo. Nov. 24, 2015), *report and recommendation adopted*, No. 14-cv-002174-RBJ-NYW, 2015 WL 9462057 (D. Colo. Dec. 28, 2015) (reasoning that ruling "on Defendant's assertion of qualified immunity . . . is an inquiry better suited for summary judgment once a factual record is developed."); *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *3 (N.D. Okla. Jan. 6, 2009) (same); *cf. Maxey by Maxey v. Fulton*, 890 F.2d 279, 281 (10th Cir. 1989) (district court's order denying Rule 12(b)(6) motion to dismiss "did not conclusively and finally deny [defendant]'s entitlement to qualified immunity, but merely deferred that issue pending development of a sufficient factual record").

[5] Sgt. Soto does not argue that Mr. Johnson fails to allege a violation of a clearly established law. Accordingly, the Court will not address this prong of the qualified immunity analysis.

9

using a taser on him after he had stopped being aggressive and while he was handcuffed and surrounded by three other officers.

"The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (constitutional inquiry is directed at whether the prisoner was subjected to an "unnecessary and wanton infliction of pain"). The court's inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline, or "whether the force applied was excessive under the circumstances, or malicious and sadistic." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001). *See also Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (observing that "[a]n action by a prison guard may be malevolent yet not amount to cruel and unusual punishment"); *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1033 (D. N.M. 2015) ("The Eighth Amendment does not require officers to use the minimum force necessary or even reasonably proportional force, but, rather, it requires only that they refrain from 'malicious and sadistic' violence, and that they direct their efforts to achieving a sincere penological end.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Court's Eighth Amendment analysis must take into consideration the highly-charged prison environment. *See Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) (recognizing that in maintaining control of inmates, a prison guard often is called upon to "make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself").

An excessive force claim involves a two-pronged analysis: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and citation omitted). The objective prong "is contextual and responsive to contemporary standards of decency." *Whitington v. Sokol*, No. 06-cv-01245-PAB-CBS, 2009 WL 2588762, at *8 (D. Colo. Aug. 18, 2009) (quoting *Hudson*, 503 U.S. at 6-7). Although not every malevolent touch by a prison official rises to the level of a constitutional violation, *Hudson*, 503 U.S. at 9 (citation omitted), a plaintiff is not required to sustain either serious or significant injuries to satisfy the objective component of an Eighth Amendment excessive force claim. *See id. See also Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that significant physical injury is not required for an Eighth Amendment excessive force claim because the constitutional inquiry is on whether the infliction of pain was unnecessary and wanton). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Nevertheless, "[t]he extent of injury may also provide some indication of the amount of force applied." *Id.* at 37 (internal citations omitted).

The subjective prong of the excessive force analysis asks whether the defendant had a sufficiently culpable mind. This element focuses "on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the

very purpose of causing harm." *Webb v. Sterling Correctional Officer Delaney*, No. 14-cv-1461-RBJ-CBS, 2016 WL 931218, at *3 (D. Colo. Mar. 11, 2016) (citation omitted). "Whether pain is wantonly and unnecessarily inflicted depends, at least in part, on whether force could have plausibly been thought to be necessary to maintain order in the institution and to maintain the safety of the prison personnel or inmates." *Whitington*, 2009 WL 2588762, at *8 (quoting *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993)). *See also Serna v. Colo. Dep't of Correction*, 455 F.3d 1146, 1152 (10th Cir. 2006) (noting that the court "can infer malicious, sadistic intent from...conduct itself where 'there can be no legitimate purpose' for the officers' conduct"). In deciding whether the use of force was necessary or malicious, a court must consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Stevenson v. Cordova*, No. 14-cv-00649-CBS, 2016 WL 5791243, at *17 (D. Colo. Oct. 4, 2016), *aff'd*, 733 F. App'x 939 (10th Cir. 2018) (citation omitted).

      Here, Mr. Johnson concedes that he assaulted a corrections officer because he was being moved to a different unit without being provided a television. However, he further alleges that after the assault had been over for "about 10 second or so," at a time when he had stopped being aggressive towards staff, when his hands were cuffed behind his back, and he was surrounded by three officers, Sgt. Soto decided to use a taser on him. (Dkt. #23 at 19.) Under these circumstances, and at this stage in the litigation, the Court finds that Mr. Johnson has plausibly pled that that Sgt. Soto violated his Eighth Amendment constitutional rights, and did so wantonly and gratuitously, by

using a taser on him when he was handcuffed and subdued by several other officers. It goes without saying that Sgt. Soto may present evidence at trial or in a motion for summary judgment that establishes that his use of the force was reasonable and necessary. However, in analyzing Mr. Johnson's allegations under the relatively lenient Rule 12(b)(6) standard, the Court finds that Mr. Johnson has stated a claim for relief, and therefore recommends that Defendants' motion be denied as to Sgt. Soto.

### 2. Deliberate Indifference Claim Against Ms. Stevens

Defendants maintain that Mr. Johnson's has failed to state a deliberate indifference to serious medical needs claim against Ms. Stevens, and therefore she is entitled to qualified immunity. Here, the Court agrees.

As Judge Jackson explained,

> "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. "The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). "[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (cited by *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006)).

*Templeton v. Anderson*, No. 12-cv-01276-RBJ-BNB, 2014 WL 3638849, at *4 (D. Colo. July 23, 2014), *aff'd*, 607 F. App'x 784 (10th Cir. 2015).

Moreover,

> "[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The constitutional obligation to provide adequate medical care includes a

responsibility to provide psychological treatment. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). Once again, two prongs must be met: the prisoner's mental health needs must be objectively serious, and the prison official must subjectively know of and disregard an excessive risk to the inmate's health or safety. *See Rashad v. Doughty*, 4 F. App'x 558, 561 (10th Cir. 2001). "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos*, 639 F.2d at 575). A "severe mental illness" is "one that has caused significant disruption in an inmate's everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself." *Tillery v. Owens*, 719 F. Supp. 1256, 1286 (W.D.Pa.1989) *aff'd*, 907 F.2d 418 (3d Cir. 1990).

*Id.*, 2014 WL 3638849, at *5.

With this in mind, the Court agrees with Defendants that Mr. Johnson does not allege that Ms. Stevens has denied him mental health treatment. First, Mr. Johnson's allegations confirm that he has received medical treatment, just not the treatment he wants. Mr. Johnson was seen by a psychiatrist at CSP who did not find symptoms of mental illness and prescribed medication to help him sleep. (Dkt. #23 at 23.) Mr. Johnson objects to this course of treatment because he has "spoken with mental health staff many times in the past both in prison and the outside world and they all have different opinions from this most recent psychiatrist." (*Id.* at 23-24.) Mr. Johnson also wants to be prescribed "heavy duty medication" like the anti-psychotic drug Thorazine. (*Id.* at 24.) However, the unidentified psychiatrist is not bound by the opinions of other medical professionals, and the Court will not second-guess the evaluations of medical personnel based on Mr. Johnson's conclusory allegations. *See Sherman v. Klenke*, 653 F. App'x 580, 588 (10th Cir. 2016) (where dispute concerns "the choice of a certain course of treatment, we will not second-guess the doctors").

Second, Mr. Johnson has not alleged that Ms. Stevens subjectively knew of and disregarded an excessive risk to Mr. Johnson's health. Mr. Johnson's claim that Ms. Stevens "is one of the main mental health staff that I met with just before and during the August assault on officer situations and she also knew I was experiencing trauma that would push me mentally over the edge to assault staff and did nothing to help me" fails to meet the *Iqbal/Twombley* pleading standard. These allegations are bare assertions not entitled to the assumption of truth. Mr. Johnson fails to allege with any particularity when the conversations took place, what Mr. Johnson told Ms. Stevens, or how Ms. Stevens responded. Accordingly, Mr. Johnson has failed to state a deliberate indifference claim against Ms. Stevens, and the Court recommends that this claim be dismissed.

### d. Damages and Injunctive Relief

**1. Compensatory Damages**

Defendants contend that the Prison Litigation Reform Act ("PLRA") bars Mr. Johnson's claim for compensatory damages. The PLRA states, in pertinent part, that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Mr. Johnson fails to plausibly allege that he suffered any physical injury relating to the incidents at issue here. However, the PLRA does not bar recovery of nominal damages where no physical injury is alleged. *See Searles v. Van Bebber*, 251 F.3d 869, 878–79, 880–881 (10th Cir. 2001) (nominal and punitive damages available absent a showing of actual injury). Because the Court finds that Mr. Johnson has stated a claim for relief under the Eighth

Amendment against Sgt. Soto, he may be entitled to an award of nominal or punitive damages arising out of this claim.[6]

### 2. Punitive Damages

Defendants maintain that Mr. Johnson's claim for punitive damages must be dismissed.

Punitive damages "may be recovered for constitutional violations without a showing of compensable injury." *Searles*, 251 F.3d at 880. However, "[p]unitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id.* at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Given that no discovery has been conducted, it would be premature for the Court to rule as a matter of law that Sgt. Soto's actions were not motivated by some evil intent or a reckless indifference to Mr. Johnson's constitutional rights. In fact, as discussed above, based solely on Mr. Johnson's allegations, a jury could infer that by using a taser on an inmate who had stopped being aggressive, whose hands were cuffed behind his back, and who was surrounded by three other officers, Sgt. Soto acted with malice.

---

[6] Mr. Johnson's request for "nominal damages" in the amount of $30,000 is plainly frivolous: nominal damages "are a mere token, signifying that the plaintiff's rights were technically invaded even though he could not prove any loss or damage." *Griffith v. State of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994). However, Mr. Johnson may be entitled to actual nominal damages, so "while the Court cannot "supply additional factual allegations to round out a plaintiff's complaint," *Whitney*, 113 F.3d at 1173–74, if it "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.

Therefore, the Court recommends that Mr. Johnson's claim for punitive damages not be dismissed.

### 3. Injunctive Relief

Finally, Defendants argue that Mr. Johnson's claim for injunctive relief is moot because the complained-of activities occurred at CSP by members of CSP staff, and it is undisputed that Mr. Johnson has now moved to SCF. The Court agrees.

Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990). The touchstone of the mootness inquiry is whether the controversy continues to "touch[ ] the legal relations of parties having adverse legal interests" in the outcome of the case. *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam) (citation omitted). This "legal interest" must be more than simply the satisfaction of a declaration that a person was wronged. *Ashcroft v. Mattis*, 431 U.S. 171, 172–73 1977) (per curiam). Thus, the Tenth Circuit has explained that a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

Applying these principles, Mr. Johnson's claim for injunctive relief is moot. Because he is no longer a prisoner at CSP, the granting of injunctive relief against CSP staff members (to the extent they are being sued in their official capacities) would amount to nothing more than a declaration that Mr. Johnson was wronged and would have no effect on Defendants' behavior towards him. *See Green v. Branson*, 108 F.3d

1296, 1300 (10th Cir. 1997). *See also McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"). Therefore, the Court recommends that Mr. Johnson's claim for injunctive relief be dismissed.

## IV. RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that Defendants Sgt. Soto and Ms. Stevens' Motion to Dismiss Amended Complaint (Dkt. #51) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to the Eighth Amendment excessive force claim against Sgt. Soto;
- **GRANTED** as to the Eighth Amendment deliberate indifference claim against Ms. Stevens; and
- **GRANTED** as to Mr. Johnson's claim for injunctive relief.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge*, Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

BY THE COURT

Date: February 22, 2019
Denver, Colorado

*[signature: N. Reid Neureiter]*

N. Reid Neureiter
United States Magistrate Judge